## Case No. 15,420.

### UNITED STATES v. HUMASON.

[5 Sawy. 537; 8 Reporter, 70; 25 Int. Rev. Rec. 208; 11 Chi. Leg. News. 328.] [1]

Circuit Court, D. Oregon. June 7, 1879.

OFFICIAL AND STATUTORY BONDS—INDIAN AGENT —PRESUMPTIONS.

1. In the absence of any statute upon the subject, a bond voluntarily given the United States to secure the payment of a debt or the performance of official duty is valid.

2. But where a statute prescribes the penalty and conditions of a bond, one given in a greater penalty or upon substantially other or different conditions is so far illegal and void.

3. An Indian agent appointed for Oregon under section 4 of the act of June 5, 1850 (9 Stat. 437), was required to give bond in the penal sum of two thousand dollars, as provided in section 4 of the act of June 30, 1834 (4 Stat. 735); and he was also a person "charged or trusted" with the disbursement or application of money or property on account of the Indian department, within the purview of section 8 of said act of 1834, and therefore might be required by the president to give a bond in a larger sum than two thousand dollars for the performance of his official duties.

4. The law presumes that official duty has been duly performed, and therefore where the Indian department took a bond from an Indian agent in Oregon in a larger amount than two thousand dollars, the presumption of law is, that the increase in the penalty was required by the executive, and the bond is valid until the contrary appears.

Action [against Phœbe M. Humason] on official bonds.

Rufus Mallory, for the United States.
John Waldo, for defendant.

DEADY, District Judge. This action is brought against the defendant as the executrix of Orlando Humason, deceased, one of the sureties upon the two bonds given by the late William Logan to the United States as Indian agent for Oregon. The defendant

demurs to the complaint and upon the argument assigned as cause, that the penalty of the bonds in excess of two thousand dollars was unauthorized by law, and they are therefore so far illegal and void.

The following are the material facts stated in the complaint: In 1861, William Logan, being an Indian agent in Oregon, together with Orlando Humason, aforesaid, executed a bond to the plaintiff in the sum of twenty-five thousand dollars, conditioned for the faithful performance of the duties of his office, and failed to account for one thousand and six dollars and six cents of the public moneys received by him as such agent thereunder. That on July 1, 1862, said Logan being still Indian agent as aforesaid, together with said Humason, executed another bond to the plaintiff in the sum of twenty thousand dollars, upon like conditions, and failed to account for seven thousand six hundred and seventy-eight dollars and sixty-six cents of the public moneys received by him as such agent thereunder.

At the date of the execution of these bonds it was provided by section 4, Act June 5, 1850 (9 Stat. 437), that Indian agents not exceeding three might be appointed for Oregon who shall "give bond as now required by law." The only provision of law then in force in the United States upon the subject of the bonds of Indian agents, was contained in sections 4 and 8 of the act of June 30, 1834 (4 Stat. 735), entitled "An act to provide for the organization of the department of Indian affairs," and enacted with reference to twelve agents for Indians east of the Rocky Mountains. By said section 4 it was provided that such agents should give bond "in the penal sum of two thousand dollars;" and by said section 8 that the president might "from time to time require such additional security, and in larger amounts, from all persons charged or trusted under the laws of the United States with the disbursement or application of money, goods or effects of any kind on account of the Indian department." Rev. St. § 2075.

So far as appears, these bonds were given by Logan and his sureties voluntarily. They relate to the performance of duties concerning the intercourse with Indian tribes—a subject within the jurisdiction of the United States—and are an appropriate means of regulating the same. In the absence then of any statute prescribing a bond with a different penalty or conditions, these bonds would be valid. U. S. v. Howell [Case No. 15,405]; U. S. v. Tingey, 5 Pet. [30 U. S.] 127; U. S. v. Bradley, 10 Pet. [35 U. S.] 357. But there was a statute in this case, prescribing the penalty of an Indian agent's bond, and so far as the penalty of these bonds vary from this standard, they are illegal and void, unless authorized by said section 8. Dixon v. U. S. [Case No. 3,934]; U. S. v. Howell, supra; Farrar v. U. S., 5 Pet. [30 U. S.] 388; U. S. v. Bradley, 10

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 8 Reporter, 70, contains only a partial report.]

Pet. [35 U. S.] 360; Armstrong v. U. S. [Case No. 549].

Section 4 of the act of June 5, 1850, supra, which provides that Indian agents appointed for Oregon should "give bond as now required by law," necessarily referred to the provisions of the act of June 30, 1834, supra, upon that subject, and they thereby became in effect, a part of such act. U. S. v. Babbit, 1 Black [66 U. S.] 56. Upon these premises it is contended by counsel for defendant, that section 4 of the act of June 30, 1834, prescribes the amount of the penalty of the bond of Indian agents for Oregon at two thousand dollars, and that the penalty of these bonds in excess of that amount is void. In support of this conclusion, it is insisted that the provisions of section 8 of the act of 1834, are not applicable to these bonds, for two reasons: (1) Because it does not appear from the complaint that the president ever made any order, either general or special, requiring these bonds to be given in a greater amount than two thousand dollars, and therefore they were so given contrary to law, and are pro tanto void; (2) That said section 8 does not apply to Indian agents, as they are not "persons charged or trusted" with the disbursement or application of money, goods or effects on account of the Indian department.

Speaking from common knowledge, one would say that an Indian agent in Oregon, at the date of these bonds, was a person largely so "charged or trusted;" and a glance at the provisions of the act of 1834 will show that such charge or trust was contemplated by the law-making power. By section 3 of that act the superintendent, under the direction of the president, has supervision over the official conduct and accounts of agents. Section 7 provides: "It shall be the general duty of Indian agents * * * to manage and superintend the intercourse with the Indians within their respective agencies agreeably to law;" to obey the instructions of the secretary of war, commissioner and superintendent of Indian affairs, and to "carry into effect such regulations as may be prescribed by the president." Section 12 directs the agent to be "present and certify to the delivery of all goods and money required to be paid or delivered to the Indians." Sections 15 and 16 authorize the president, under certain circumstances and independent of any treaty stipulation, to furnish Indians with rations, goods, animals and implements of husbandry; and section 17 authorizes the president to prescribe rules for carrying this or other acts relating to Indian affairs into effect.

By these rules an agent may be directly "charged or trusted" as provided in section 8 of the act of 1834; and it is fair to presume that such was the case with the principal in these bonds, for the condition of them is that he will faithfully account for all public money and property which shall come to his hands, while it appears from the complaint that he actually did receive large sums of public money to be expended and accounted for as Indian agent.

But more than this, the act directly provides, as stated, that the agent shall superintend the Indians of his agency and enforce the regulations of the president, which almost necessarily involve the disbursement of money and the application of property, for the supervision of an agent's accounts, which necessarily implies disbursements, and for the agent's presence and participation in the delivery of all goods and money to the Indians, which also implies that he is at least "charged or trusted" with the "application" of the same. It is not necessary that this charge or trust should be solely in the agent, but it is sufficient if he is called upon to act in conjunction with others, or even as an inspector or witness of the actions of such others.

But there are other acts of congress in force at the date of the execution of these bonds which bear upon this section. Section 8 of the act of 1834 is prospective, and applies whenever, by any subsequent legislation or executive regulation, an Indian agent is required to disburse or apply money or property on account of the Indian department. Section 1 of the act of March 3, 1857 (11 Stat. 169; Rev. St. § 2089) authorizes the president to direct the payment of money to Indians or Indian tribes by the superintendent, in the presence of the agent as a witness. Section 1 of the act of June 27, 1846 (9 Stat. 20; Rev. St. § 2092) provides that "no superintendent, Indian agent or other disbursing officer in such service shall have advanced to him on Indian or public account any money to be disbursed in future" until he has settled his accounts for the preceding year and the balances in his hand are ready to be paid over.

By this act it is distinctly assumed that Indian agents are disbursing officers in that department or "service," and so they were. Of this there can be no doubt, although their powers and duties in this respect may have been mainly prescribed by executive regulation. As has been suggested, in Oregon, for years prior to the date of these bonds, it was a matter of common knowledge that the yearly disbursements of the Indian agents amounted to hundreds of thousands, and formed an important item in the circulation and business of the country.

It is also suggested for the defendant that the executive power to require "additional security" from agents does not include the power to prescribe the amount of the original bond. "Additional security" may be either a new or additional bond with the same or other sureties in the same or a greater amount. The security given by an officer for the performance of his duties consists as well in the amount of his bond as the number and character of his bondsmen, and an

additional security necessarily implies an additional bond or one in a greater amount, or with more responsible sureties.

But the power to require "additional security" is not all the power conferred upon the president by section 8 of the act of 1834. He may also require security to be given in "larger amounts"—that is, than the sum of two thousand dollars, as prescribed in section 4 of said act. If this is not the effect of the clause—"and in larger amounts," it has no signification and is superfluous.

As to the first of these objections—that it does not appear from the complaint that Logan was required by the president to give bond in an amount larger than two thousand dollars—I am quite clear that the mere giving and taking the bond in such an amount is sufficient to warrant the presumption that he was so required, until the contrary appears. Official duty is presumed to have been regularly performed, and therefore, when the commissioner of Indian affairs or other officer of the Indian department took these bonds from Logan in an amount larger than two thousand dollars, the law presumes that he did so rightfully rather than otherwise by the direction, general or special, of the president.

The question involving an official act of the executive is triable by the knowledge of the court and must eventually be determined by it from an examination of the executive records and proceedings. If no such direction was ever given, then there was no authority for giving or taking these bonds in any greater sum than two thousand dollars, and all in excess of that amount is void. The demurrer is overruled.

[The plaintiffs' demurrer to the defendant's pleas, subsequently filed, was overruled. Case No. 15,421.]